GULOTTA, Judge
(dissenting in part).
I concur with the conclusion reached by the majority that the general damage award should be reduced, but disagree with the extent of the reduction. I am of the opinion that a $20,000.00 general damage award is proper.
Plaintiff sustained injury to the neck, shoulder, back and a mild concussion and abrasion as a result of a rear-end collision while he was seated in a stopped police vehicle. Immediately after the accident, Duffy was taken to Methodist Hospital where x-rays were taken, a surgical collar was applied, medication for pain and muscle relaxants were prescribed. Thereafter, he was released.
Dr. Dominick Condie initially examined plaintiff on December 4, 1972. Plaintiff’s condition was diagnosed as a cerebral concussion and a cervical-thoracic and lumbo-sacral sprain of the back. Dr. Condie found severe muscle spasm causing a twisting of the spine, defined as scoliosis. Muscle relaxants, sedatives and pain relievers were prescribed. Diathermy and physiotherapy treatments were administered 26 times between December 4, 1972 and February 2, 1973. Neck traction was applied.
Muscle spasm and tenderness in the area of the neck were found on December 8 and December 13 visits. Examinations during late January and on February 2, 1973, indicated some improvement, but plaintiff continued to complain of neck pain which worsened with strenuous activity. Plaintiff was not seen again by Dr. Condie until May 23, 1973, at which time Duffy complained of muscle fatigue and neck discomfort. The doctor found crepitation (a cracking sound occurring with rotation of plaintiff’s head)[1] and a slight tenderness along the neck muscles. Dr. Condie’s examination of plaintiff and a comparison of x-rays taken on the date of the accident and on September 30, 1974, revealed that plaintiff had developed a narrowing of the posterior aspect of the fourth interspace and spurring (excess bone formation). According to the doctor, it was not normal for a 27 year old male, such as plaintiff, to *653 have these types of x-ray changes. The narrowing and spurring indicated plaintiff had developed an arthritic condition as a result of the trauma. Dr. Condie related continued discomfort to post-arthritic changes caused by trauma from the accident. The doctor was of the opinion that the existing arthritic changes would become progressive and that a possibility existed of further difficulty or surgery. Additionally, he stated plaintiff would continue to suffer pain in the future, extending from mild discomfort to severe pain. The doctor assessed a 10% to 20% permanent disability of the neck.
Dr. Henry M. Duhe, a radiologist, who had taken x-rays of Duffy’s cervical and lumbosacral spine on June 14, 1968, did not find any spurring or narrowing of the cervical spine at that time. X-rays taken on September 30, 1974, revealed narrowing between the fourth interspace with minimal spurring. Based on examination of the December, 1972 x-rays, Dr. Duhe was of the opinion that the accident did not cause the narrowing but could have caused the spurring which Dr. Duhe stated could be classified as traumatic arthritis. According to Dr. Duhe, the spurring build-up, resulting in pressure on the nerve, could produce pain. He indicated this is a permanent process.
Examination of the 1972 x-rays by Dr. Lowell Hurwitz showed a narrowing of the C-4 and C-5 interspace as well as an indication of muscle spasm. His examination of the September 30, 1974 x-rays revealed some narrowing of the interspace and spurring. It is his opinion that the spurring was caused by the trauma from the 1972 accident. The doctor explained that plaintiff’s condition could progress and develop increased spurring or disc changes resulting in continuing discomfort.
Dr. Eugene Dabezies, an orthopedic surgeon, examined plaintiff on October 15, 1974. He also examined the 1972 and 1974 x-rays and concluded that there existed no significant spurring and no narrowing of the disc space. It was his opinion that plaintiff suffered a sprain of the cervical spine. He found some tenderness of the trapezius muscle. Dr. Dabezies concluded that Duffy did not have a degenerative process going on in the spine as a result of the accident. In addition, he did not think plaintiff would need further surgery and did not anticipate any deterioration in plaintiff’s condition that would necessitate any hospitalization. Dr. Dabezies saw no further need for medical treatment and did not discover any objective symptoms on which to base a disability rating.
Samuel J. Fury, plaintiff’s platoon commander, stated that upon Duffy’s return to police work after the accident, he complained of neck and back pain. According to Fury, approximately once a week or every two weeks, Duffy requested to be excused from work. Joseph Gallodoro, with whom Duffy worked for a three-month period between January and October, 1974, stated that plaintiff complained of neck pain and stiffness caused from driving a police vehicle. Duffy was assigned lighter police duty as a prevention against aggravation of his injury.
According to plaintiff, the injury has caused him to become irritable and moody, resulting in a changed disposition which contributed to the separation between himself and his wife.
Sharon Duffy, plaintiff’s wife, corroborated Duffy’s complaints of headaches, neck and back pain. She described plaintiff’s pain as severe, causing Duffy to become irritable and withdrawn.
Under the circumstances, I am led to a conclusion that a reduction to the sum of $10,000.00 for general damages is inadequate. Plaintiff’s injuries support a $20,000.00 award.

. As a result of an unrelated automobile accident, Dr. Condie had previously examined plaintiff in June, 1968, and had heard Duffy make the same cracking sound. I-Iowever, spurring was not present in 1968.